CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/22/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ABRIEL L. NEVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:16-CV-6 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Abriel L. Neville ("Neville") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was no longer disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433. Neville alleges that the ALJ failed to properly evaluate whether his impairments met or equaled Listing 12.05 (Intellectual Disorder), erred when finding he can perform work at Reasoning Level Two, failed to properly weigh an October 2011 opinion of his examining physician, and failed to seek an opinion from his treating psychiatrist. I find that the ALJ failed to properly analyze Prong 1 of Listing 12.05. As such, I **RECOMMEND** that Neville's motion for summary judgment (Dkt. No. 12) be **GRANTED in part** and the Commissioner's motion for summary judgment (Dkt. No. 14) be **DENIED,** and that the case be **REMANDED** for further consideration by the ALJ.

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

[2] The Social Security Act and its accompanying regulations require that all individuals receiving SSI as a child have their eligibility re-determined when they reach age 18. 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Neville failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## CLAIM HISTORY

Neville received SSI based on disability as a child. R. 12. The Social Security Administration re-determines benefits when an individual reaches age 18 using the rules for

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

determining disability in adults. 42 U.S.C. § 1382c(a)(3)(H)(iii). On April 19, 2011, the Social Security Administration ("SSA") determined Neville was no longer disabled as of April 1, 2011 (R. 12, 108–11), which a state agency disability hearing officer upheld upon reconsideration. R. 12. ALJ Brian P. Kilbane held hearings on May 8, 2012 (R. 80–5) and on August 9, 2012 (R. 12, 88–102), and issued an unfavorable decision on August 31, 2012. R. 12, 88–102. On December 5, 2013, the Appeals Council remanded the case for further proceedings. R. 12, 104–06. The Appeals Council directed that the ALJ obtain additional evidence, including a consultative examination, re-evaluate whether Neville's intellectual impairment is properly characterized, and consider whether Neville's diagnosed schizoaffective disorder, alcohol dependence and marijuana abuse are severe impairments. R. 105.

On October 28, 2014, the ALJ held another hearing. R. 29–59. Neville was represented by an attorney at the hearing, which included testimony from vocational expert David Burnhill and Neville's aunt. Id. On November 17, 2014, the ALJ entered his decision analyzing Neville's claim under the familiar five-step process,[4] denying Neville's claim for disability. R. 12–24. The ALJ found that Neville suffered from the severe impairments of cognitive disorder (not otherwise specified), borderline intellectual functioning, alcohol/substance dependence and schizoaffective disorder. R. 15. The ALJ found Neville's mental impairments, including the substance use disorders, meet listings 12.04 and 12.09. R. 15. The ALJ determined that if Neville

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

stopped abusing substances, the remaining limitations would not meet or medically equal the criteria of listings 12.04 or 12.05. R. 15–6.

The ALJ further found that if Neville stopped abusing substances, he would have the RFC to perform a full range of work at all exertional levels, but would be limited to simple, repetitive unskilled tasks, and could maintain regular attendance, complete a normal workweek, and deal appropriately with instructions, the public and coworkers. R. 17. The ALJ determined that Neville had no past relevant work (R. 22), but could work at jobs that exist in significant numbers in the national economy, such as industrial cleaner, hand packager, grocery bagger/cart attendant, landscape laborer and cleanup worker. R. 23. Thus, the ALJ concluded that Neville was not disabled. R. 23–4.

On January 12, 2016, the Appeals Council denied Neville's request for review (R. 1–5), and this appeal followed.

## **ANALYSIS**

Neville asserts that the ALJ failed to properly evaluate whether his mental impairments met or equaled Listing 12.05, erred by finding he can perform work at Reasoning Level Two, failed to properly attribute the October 30, 2011 opinion to that of his examining physician, and erred when failing to seek an opinion from his treating psychiatrist.

## **Listing 12.05**

Neville contends that the ALJ erred because he failed to adequately analyze whether Neville's mental impairments met or medically equaled the listing contained in § 12.05 for an intellectual disability. Specifically, Neville argues the ALJ improperly addressed Prong 1 of Listing 12.05, and that he otherwise meets the requirements of 12.05(C).[5]

---

[5] The SSA revised Listing 12.05 criteria on January 17, 2017. The SSA's rule clearly states that the revised criteria found in Listing 12.05 apply only to "applications filed on or after the effective date of the rules, and

4

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, No. 3:09-CV-00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Listing 12.05 for intellectual disability, at the time of the ALJ's decision, stated the following with respect to pertinent section (C):

> **12.05** *Intellectual disability:* intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05. The structure of this listing is different than other mental disorder listings in that it contains "an introductory paragraph with the diagnostic description for intellectual disability", as well as criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00(A). Thus, Listing 12.05(C) presents a three-pronged proof requirement. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

---

to claims that are pending on or after the effective date." SOCIAL SECURITY ADMINISTRATION; REVISED MEDICAL CRITERIA FOR EVALUATING MENTAL DISORDERS, FINAL RULE, 81 Fed. Reg. 66,138 (Sept. 26, 2016) (codified at 20 C.F.R. §§ 404, 416). The rule further states: "We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." Id. Therefore, I analyze the criteria for Listing 12.05 in effect at the time the ALJ analyzed Neville's claim.

First, Prong 1 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period...." Prong 2 requires a valid verbal, performance, or full scale IQ score of 60 through 70, and Prong 3 requires that the claimant establish "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. If an ALJ "determines that a claimant does not have deficits in adaptive functioning and bases that determination on substantial evidence, the inquiry ends." Burkhammer v. Comm'r of Soc. Sec., No. 1:12CV113, 2013 WL 4478105, at *6 (N.D.W. Va. Aug. 19, 2013) ((citing Hancock, 667 F.3d at 475) ("…even if the ALJ's finding concerning Prong 2 of Listing 12.05C did not rest on substantial evidence, we would still be required to affirm the ALJ's decision if his finding with regard to Prong 1 was based on substantial evidence.")).

When analyzing this listing, the ALJ stated:

Under section 12.05, the record does not establish significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested before the age of 22. As detailed below, the claimant was administered the Wechsler Adult Intelligence Scale (4th Edition) during an April 2011 psychiatric evaluation and achieved a Verbal Comprehension Index score of 63, a Perceptual Reasoning Index score of 77, a Working Memory Index of 74, a Processing Speed Index of 71, and a Full Scale IQ score of 66. Despite the claimant's low Verbal Comprehension and Full IQ scores, Dr. Bremer diagnosed cognitive disorder (not otherwise specified) and specifically noted that she did "not think he meets diagnostic criteria for mild mental retardation," as he had not shown adaptive behavior problems "and is getting along pretty well in the world." (Ex. 1F, pp. 4-5). Further, the record indicates that in April 2000 the claimant was administered the Weschler Intelligence Scale for Children (3rd Edition) and achieved a Verbal IQ score of 81, a Performance IQ score of 73, and a Full Scale IQ score of 75 (Ex. 2E, p. 148). During the hearing, the medical expert noted diagnoses of cognitive disorder (not otherwise specified) and borderline intellectual functioning, and declined to report a diagnosis of intellectual disability or mental retardation. Thus, the undersigned finds that claimant's conditions do not meet the criteria of section 12.05 of the medical listings.

R. 17. The ALJ conflates his analysis of Prong 1 with Prong 2 when he cites to Neville's IQ scores and does not independently analyze Prong 1 as to whether Neville had subaverage intellectual functioning, deficits in adaptive functioning, and an onset date prior to age 22. This alone would warrant remand. See Wynne ex rel. Pennell v. Astrue, No. 5:09–cv–367, 2010 WL 2402843, at *5 (E .D.N.C. May 21, 2010) (recommending remand where it was "unclear whether the ALJ actually engaged in the first step of the mental retardation listing analysis"); Ragland v. Astrue, No. 5:08–CV–152, 2009 WL 1904530, at *6 (Jul. 1, 2009) (remand appropriate where first step of Listing 12.05 analysis was "subsumed into an analysis of whether Claimant satisfied one of the four requirements in the second step of the analysis"); Hansen v. Astrue, No. 4:07–CV–24–WW, Slip Op. at 7 (E.D.N.C. Nov. 2, 2007) (recommending remand because the ALJ did not specifically address the first step in Rule 12.05 process); Williams v. Colvin, No. 5:12-CV-676-D, 2013 WL 6058204, at *7 (E.D.N.C. Nov. 15, 2013).

Further, the Fourth Circuit has clarified the ALJ's duty to explain his determination, stating that an ALJ must set forth a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The failure of an ALJ to make such a connection means "the analysis is incomplete and precludes meaningful review." Id. at 190. Here, the ALJ cursorily concluded that Neville does not meet the listing, failing to address conflicting evidence showing deficits in adaptive functioning in the listing analysis. In Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012), the Fourth Circuit adopted the standard in Atkins v. Virginia, 536 U.S. 304 (2002), holding that the areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community

7

resources, self-direction, functional academic skills, work, leisure, health and safety." Functional illiteracy can also constitute a deficit in adaptive functioning. See Strong v. Astrue, 2011 WL 2938084, at *11 (D.S.C. 2011); Davis v. Astrue, No. 2:07–1621, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008); Whites v. Astrue, 2012 WL 638804, at *10 (D.S.C. 2012).

Here, the ALJ noted Neville testified that he never learned to read or write when determining Neville's RFC (R. 18), but he never addressed this issue during the listing analysis. Indeed, when Neville was nineteen years old, his reading level was at the first to second grade level, which "demonstrates a deficit in 'functional academic skills'". R. 274; Strong, 2011 WL 2938084 at *11. Special educational teacher records dated March 24, 2011, when Neville was eighteen years old, indicate Neville was "difficult to understand to an unfamiliar listener", and had serious problems in using language appropriate to the situation and listener, carrying out multi-step instructions, and interpreting the meaning of facial expressions, body language, hints and sarcasm. R. 274–281. By concluding that "the record does not establish significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested before the age of 22" without adequately analyzing the conflicting evidence, the ALJ fails to provide the necessary explanation for his listing determination, warranting remand. R. 17.

Since the ALJ failed to independently analyze Prong 1, there are indications Neville has deficits in adaptive functioning, and the ALJ fails to examine the conflicting evidence when analyzing Listing 12.05, substantial evidence does not support the ALJ's decision. Accordingly, I **RECOMMEND** that this case be remanded for further consideration of the ALJ's opinion consistent with this recommendation.

**RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that Neville's motion for summary judgment be **GRANTED in part**, the Commissioner's motion for summary judgment be **DENIED,** and that the case be **REMANDED** for further consideration by the ALJ.[6]

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 22, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[6] Neville also argues that the ALJ erred when finding that Neville can perform work at Reasoning Level Two, failed to properly weigh an October 2011 opinion of Neville's examining physician, and erred when failing to seek an opinion from Neville's treating psychiatrist. On remand, it is recommended that the ALJ consider the merits of these arguments as well under the relevant regulations and case law.